IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SALVADOR O. OROZCO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 06-309-CJP |
| MICHAEL J. ASTRUE,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Salvador O. Orozco seeks judicial review of the March 1, 2006, final agency decision finding that he is not disabled and denying him Disability Insurance Benefits (DIB), pursuant to 42 U.S.C. § 423.

Upon consent of the parties, this matter has been assigned to undersigned for final disposition, pursuant to 28 U.S.C. §636(c).  **See, Docs. 15 - 18.**

## Procedural History

Salvador O. Orozco filed the present application for DIB on February 2, 2003.  (Tr. 56). He claimed a disability date of September 10, 2000, due to severe pain in his back from his neck to his hips.  (Tr. 76).  The Social Security Administration Field Office recommended that his onset date be changed to December 1, 2000, because he continued to work through that date. (Tr. 85).

The application was denied initially and on reconsideration.  Plaintiff requested a

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007.  He is substituted as defendant herein pursuant to Fed.R.Civ.25(d).

hearing, which was held before Administrative Law Judge (ALJ) Kathleen Gavin on July 14, 2005. (Tr. 228-252). At the time of the hearing, plaintiff was incarcerated in the Illinois Department of Corrections, where he remains today. ALJ Gavin denied the application for benefits in a decision dated July 26, 2005. (Tr. 13-20). Plaintiff's request for review was denied by the Appeals Council and the decision of the ALJ became the final agency decision. (Tr. 5-7). Plaintiff has exhausted his administrative remedies and has filed a timely complaint in this court.

### Issues Raised by Plaintiff

Plaintiff is pro se in this court. Despite being ordered to file a brief, see **Docs. 14 & 19**, he has not done so. His compliant does not raise any specific allegation of error, except to reiterate that he is in pain and has medical problems.

In the absence of any specific allegation of error, the court will undertake a general review of the ALJ's decision.

### The Evidentiary Record

The court has reviewed and carefully considered the entire record in formulating this Memorandum and Order. The following is a summary of some of the pertinent portions of the written record.

**1.      Work History Report**

Plaintiff reported that he has worked in the past as a laborer in a meter repair shop, an operator/helper in the fabrication of semi trailers, a machine operator, and a forklift driver. (Tr. 104). On January 16, 2003, he reported that he began working for Performance Temps, Inc., as a laborer beginning on November 15, 2002. (Tr. 90).

**2.      Plaintiff's testimony**

Plaintiff was not represented by an attorney at the hearing. He was in prison for use and distribution of cocaine. (Tr. 234). He was arrested in 2003. (Tr. 235-236). His release date is 2011. (Tr. 233). He left school in the fourth grade, but was working on getting his GED (Tr. 234-235). He does not work in prison. (Tr. 235).

Plaintiff testified that he cannot work because of problems with his back. He had surgery for a pinched nerve in the past. (Tr. 236). He hurt his back on the job in 1985. (Tr. 239-240). He has numbness in his left leg when he wakes up, and has pain in the middle of his back, which feels like he "can't stand up straight." (Tr. 237). He takes no medications at all for his back. (Tr. 238). He testified that he is able to sit for an hour or an hour and a half, and can walk for 2 or 3 hours. (Tr. 239).

He also has asthma, but was taking no medication for that at the time of the hearing. Sometimes he feels like he runs out of air. He smokes. (Tr. 240).

Plaintiff worked as a machine operator from 1990 to 1999. This involved standing at a conveyor belt and frequently lifting 10 to 15 pounds. He occasionally lifted weights up to 60 pounds. He left that job when they went on strike. (Tr. 241-243). In 1999 and 2000, he worked as a machine operator helper, building trailers for semis. He lifted no more then 10 or 15 pounds in that job, and stood most of the time. He had the option of sitting if he wanted to. He was laid off of that job. (Tr. 245-246). In 2002, he worked as a laborer. (Tr. 245).

Plaintiff testified that he has applied for many jobs but has not been hired. (Presumably, he was referring to the period of time before he was incarcerated.) He believes that he was not hired because of his history of a back injury, plus his age. (Tr. 247). He then stated that he

thought he could work in a real light job.[2]  (Tr. 247).

**3.      Testimony of vocational expert**

Thomas Mehaffey, Ph. D.,  testified as a vocational expert.  (Tr. 248).

Dr. Mehaffey testified that plaintiff's previous his work as a machine operator was light to medium in physical demands and semi-skilled; his work as a machine operator helper was light and unskilled; and his work as an operator helper was medium and unskilled.  Plaintiff has transferrable skills that would transfer to factory work.  (Tr. 249).

The ALJ asked Dr. Mehaffey to assume a person who could perform work at the medium exertional level[3] with occasional climbing, stooping, and crouching, and other postural functions frequently.  He testified that such person would be able to perform plaintiff's previous work of welding machine operator, machine operator helper, and operator helper.  (Tr. 250).

The VE was also asked to assume a person of plaintiff's age (52), with a marginal education, and limited to light work with a sit/stand option.  That person would be unable to perform plaintiff's past work.  That person would be able to do other jobs, such as packaging (2000 jobs in 20 mile radius), embossing press operator (1000 jobs), inspection work in factory (1000 jobs).  (Tr. 250-251).

**4.      Medical records**

The record includes old medical records from Perry Memorial Hospital in Princeton, Illinois.  Plaintiff was seen there for back pain in 1992.  He had a history of spinal fusion for a

---

[2]The transcript says that plaintiff stated that he could work in a "real life job."  Tr. 247.  The ALJ heard this phrase as "real light job."  (Tr. 17).

[3]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §404.1567(c).

herniated disc in 1984. (Tr. 147). In April, 1985, he fell down a flight of steps while intoxicated. He had low back pain. An x-ray taken on April 25, 1985, was unremarkable except for the prior surgery site. (Tr. 166). In September, 1985, he fell about 10 feet to a concrete floor, and was seen at Perry Memorial for back pain. This was diagnosed as acute low back strain with no neurological deficits, and was treated with muscle relaxers and pain relievers. (Tr. 161). In October, 1992, he was using a wrench at work and felt a pop in his back. This caused pain in his back and some numbness in his left leg. (Tr. 147). A CT scan was done on October 29, 1992, which showed a previous partial laminectomy at L4-L5. There was no disc herniation, and the bony elements were intact. (Tr. 151-152).

Plaintiff had an MRI of the lumbar spine at Illinois Valley Hospital in Peru, Illinois, on December 30, 2002. This was ordered by Dr. Constantin Perales. The MRI showed mild degenerative disc and facet joint disease involving the L3-L4 disc space and the facet joints from L3-S1. There were post-operative changes at L4-L5, with moderate narrowing of the disc space. There was inflammation associated with degenerative osteoarthritis, but no significant spinal stenosis or evidence of nerve root impingement. (Tr. 182-183).

Dr. Perales' office records indicate that plaintiff was seen on November 6, 2002, Janaury 2, 2003, and April 22, 2003, complaining of back pain and pain and numbness in the left leg. (Tr. 195-198). On the last visit, physical exam showed positive straight leg raising at 30 degrees on the left and 70 degrees on the right, and the diagnosis was chronic low back pain. (Tr. 195).

The record also includes medical records from Robinson Correctional Center. A mental health evaluation on June 17, 2004, was unremarkable, with no indication of depression or anxiety. (Tr. 218). A chest x-ray on June 21, 2004, showed scarring in the left lung due to old

TB. (Tr. 215). A physical examination in June, 2004, indicated that plaintiff had been treated for pneumonia in Janaury, 2004; there were no notations regarding back problems except to note the history of back surgery in 1985. (Tr. 217). He was taking no medications at that time. (Tr. 216). A psychiatric evaluation was done on November 18, 2004. The report indicates that plaintiff had been a heavy drinker and had been through rehabilitation twice. He began using cocaine 3 or 4 years prior, and used cocaine almost every day until the past year. (Tr. 210). He was experiencing mildly depressive feelings, due to the stress of being in prison and away from his family. He was prescribed Fluoxetine for depression. (Tr. 211).

A follow-up psychiatric evaluation was done at Robinson on April 14, 2005. Plaintiff was doing well, with a stable mood and no clinical symptoms of depression. He was continued on Fluoxetine. (Tr. 221).

### 5.   State Agency Physician Evaluations

A state agency physician reviewed plaintiff's medical records and evaluated his residual functional capacity in 2003. (Tr. 199-206). His evaluation was that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, could stand/walk 6 out of 8 hours, could sit 6 out of 8 hours, and had no manipulative, visual, or communicative limitations. He had postural limitations of only occasional climbing, stooping, or crouching. A second state agency physician concurred in the assessment. (Tr. 206).

### Applicable Standards

To qualify for disability insurance benefits, a claimant must be "disabled," which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See,** ***Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992);** ***Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and he is not capable of performing his past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that the claimant is capable of performing. **See,** ***Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** ***Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court. **42 U.S.C. § 405(g)** states that "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Thus, the Court must determine not whether plaintiff is, in fact, disabled during the alleged period, but whether the ALJ's findings were supported by substantial evidence, and, of course, whether any errors of law were made.

See, **Books v. Chater**, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)). In reviewing the ALJ's decision denying benefits, the Court's focus is on whether the ALJ's decision is supported by substantial evidence in the record, and not on whether a different decision could have been reached. **Henderson v. Apfel**, 179 F.3d 507, 512 (7th Cir.1999).

The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater**, 103 F.3d 1384, 1390 (7th Cir. 1997); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

## Analysis

The court notes that, even if he were found to be disabled, Mr. Orozco would be precluded from receiving benefits until he is released from prison. 42 U.S.C. §402(x)(1)(A) provides as follows:

> Notwithstanding any other provision of this subchapter, no monthly benefits shall be paid under this section or under section 423 of this title to any individual for any month ending with or during or beginning with or during a period of more than 30 days throughout all of which such individual--
>
> (i) is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense[.]

The Illinois Department of Corrections website (http://www.idoc.state.il.us, accessed on August 16, 2007) lists Mr. Orozco's projected parole date as December 5, 2011.

The ALJ properly followed the framework of the five step analysis described above. The ALJ noted that plaintiff had worked after the alleged onset of disability, but that his earnings were insufficient to give rise to a presumption of work at the level of disqualifying substantial gainful activity. ALJ Gavin found that plaintiff has a "severe" impairment due to his back pain secondary to degenerative disc disease and arthritic changes, but he does not have an impairment or combination of impairments which meet or equal the criteria of a listed impairment. (Tr. 14-15). She also found that plaintiff has asthma, polysubstance addiction in remission, and depression, but these conditions are not severe within the meaning of 20 C.F.R. §404.1520. That regulation states that an impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. The ALJ noted that plaintiff's symptoms of depression were alleviated with medication and that he had no episodes of decompensation. (Tr. 16).

The ALJ found that plaintiff's impairment due to his back, although severe, did not meet or equal a listed impairment. She therefore considered his residual functional capacity.

The ALJ found that plaintiff's testimony regarding the degree of pain and limitation he suffers to be not fully credible. She noted that he had not sought treatment for pain while in prison, and was not taking any pain medication. She further noted that plaintiff admitted that he could work. (Tr. 17).

The ALJ accepted the opinions of the state agency physicians and found that plaintiff has the RFC to perform medium work. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." **Social Security Ruling 96-6p, at 2.**

Having found that plaintiff has the capacity to do medium work, the ALJ accepted the

vocational expert's testimony that plaintiff is able to perform his past work of welding machine operator, helper operator, and machine operator. (Tr. 18-19).

As was noted above, plaintiff did not file a brief in this court. He attached a "petition to review decision" to his complaint, in which he argues that the ALJ did not give him a fair and impartial hearing, and that her questions were intentionally misleading. He does not give any specifics. The court must disagree; the transcript of the hearing shows that the ALJ questioned plaintiff about the relevant issues. She also gave him an opportunity to tell her anything he wanted to about why he feels he is unable to work. See, Tr. 247.

The medical records support the ALJ's conclusion that plaintiff is not disabled. The only evidence that would support a contrary finding was plaintiff's testimony. However, the ALJ found that plaintiff's testimony about the severity of his pain and his limitations was not entirely credible. She noted that he had only minimal treatment for back pain since his surgery, that he takes no pain medication, and that he has not sought other treatment for the pain. (Tr. 17).

The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. **Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).** The ALJ cited the correct regulation, **20 C.F.R. § 404.1529**, and SSR 96-7p [4] with regard to evaluation of subjective complaints such as pain. There is no basis here on which to overturn the ALJ's credibility findings.

Plaintiff seems to suggest that the ALJ erred in denying him benefits because she found

---

[4] Social Security Rulings "are interpretive rules intended to offer guidance to agency adjudicators." **Lauer v. Apfel, 169 F.3d 489, 492 (7th Cir. 1999)**. Social Security Rulings are "binding on all components of the Social Security Administration." **20 C.F.R. § 402.35(b)(1)**. They do not, however, "have the force of law or properly promulgated notice and comment regulations." **Lauer, id.**

that he has impairments. However, the fact that plaintiff has impairments, or "severe" impairments, does not necessarily mean that he is disabled. Whether plaintiff is disabled depends upon his residual functional capacity, which is what an individual can still do despite his limitations. *See* **20 C.F.R. §404.1545(a)**. RFC is an administrative determination reserved to the Commissioner. **20 C.F.R. § 404.1527(e)(2);** *see also* **Social Security Ruling ("SSR") 96-5p.**

The ALJ's findings as to Mr. Orozco's RFC are supported by substantial evidence, i.e., the medical records and the conclusions of the state agency physicians. Plaintiff points to no evidence which contradicts those conclusions, except for his own testimony. However, this court cannot reweigh the evidence or decide questions of credibility. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997);** ***Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001)**.

The court notes that plaintiff did not testify that he left any of his jobs due to physical inability to do the work. Rather, his jobs ended due to a strike, being laid off, and, presumably, his arrest and incarceration in 2003. (Tr. 242-243, 245). He testified that he felt he was not hired for jobs for which he applied because of his history of back injury and his age. (Tr.247). The ALJ noted that his drug use and criminal history might also be factors which might be considered by prospective employers, but they are not evidence of a disabling condition. Social security benefits are not a substitute for unemployment benefits; plaintiff is entitled to receive DIB only if he is disabled within the meaning of **42 U.S.C. §§ 423(d)(1)(A).** If he is physically able to work, the fact that he might have difficulty getting hired for a job does not entitle him to Social Security benefits.

After a careful review of the record and the pleadings filed by plaintiff, this court is

convinced that the ALJ's decision is supported by substantial evidence in the record, and that no errors of law were made.  Because the record as a whole provides substantial evidence to support a conclusion that plaintiff is not disabled, the decision denying him benefits must be affirmed.

Accordingly, the final decision of the Commissioner of Social Security finding that plaintiff Salvador O. Orozco is not disabled, and is therefore not entitled to Disability Insurance Benefits, is **AFFIRMED**.

**The Clerk of Court is directed to enter judgment in favor of defendant.**

**IT IS SO ORDERED**.

Date:  August 17, 2007.

>    s/ Clifford J. Proud
>    **CLIFFORD J. PROUD**
>    **UNITED STATES MAGISTRATE JUDGE**